UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RETAINED REALTY, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>GREEN TECH CORP. and JOSEPH M. DISTASIO,<br><br>    Defendants,<br><br>v.<br><br>EMIGRANT FUNDING CORPORATION,<br><br>    Third-Party Defendant. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*   Civil Action No. 21-cv-10781-ADB<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

**MEMORANDUM AND ORDER ON MOTION TO DISMISS**

BURROUGHS, D.J.

Before the Court is Plaintiff Retained Realty, Inc. ("Retained Reality") and Third-Party Defendant Emigrant Funding Corporation's ("Emigrant," together with Retained Realty, "Plaintiffs") motion to dismiss Defendants Green Tech Corp. and Joseph M. DiStasio's ("Defendants" or "DiStasio") counterclaims and third-party claims. As more fully set forth below, the motion, [ECF No. 20], is GRANTED because Defendants' claims are barred under the doctrine of claim preclusion.

**I.    BACKGROUND**

The following facts are drawn from the counterclaim complaint, the allegations of which are taken as true for purposes of evaluating Plaintiffs' motions to dismiss. See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014). The Court also draws facts from documents

attached to and incorporated by reference into the complaint. A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013).

In 2005, DiStasio purchased the property at 41 Union Street, Holbrook, MA (the "Property") for $300,000.00. [ECF No. 11 ¶ 10]. To fund this purchase, DiStasio made a down payment of $85,785.00, and obtained a mortgage loan for $225,000.00 from Emigrant. [Id. at ¶¶ 5, 11]. After securing the mortgage, DiStasio made regular monthly payments on the loan. [Id. at ¶ 12].

Several years later, in January 2010, DiStasio filed a petition for Chapter 7 bankruptcy for reasons unrelated to the mortgage. [ECF No. 11 ¶ 15]. Emigrant was notified of and listed as a creditor on the bankruptcy petition. [Id. at ¶¶ 16–17]. In the Spring of 2010, Emigrant contacted DiStasio regarding a potential loan extension, but DiStasio declined the offer and continued to make payments on the mortgage loan by automatic withdrawals from his bank account. [Id. at ¶¶ 21–23].

Then, in early 2011, Emigrant raised the interest rate on DiStasio's mortgage loan from 7.125% to 18%. [ECF No. 11 ¶ 24]. In April 2011, Emigrant withdrew a monthly mortgage payment from DiStasio's bank account, which took into account the increased interest rate. [Id. at ¶ 25]. Due to the higher rate, however, the withdrawal "nearly deplet[ed]" the account. [Id.]. Subsequently, in May 2011, there was not enough money in the account to cover the mortgage payment, which led Emigrant to report a late payment to credit bureaus. [Id. at ¶¶ 26–27]. Thereafter, Emigrant continued to report late payments, which rendered DiStasio unable to obtain refinancing for the mortgage from other banks. [Id. at ¶¶ 30–31].

In February 2012, DiStasio signed a mortgage extension with Emigrant, and as part of the extension, paid Emigrant $10,999.00. [ECF No. 11 ¶¶ 32–33]. In March 2012, Emigrant

informed DiStasio that the principal balance of the mortgage was $198,568.22. [Id. at ¶ 34]. DiStasio, believing the balance to be "too high," requested an accounting of the mortgage payments. [Id. at ¶¶ 35, 41]. Emigrant never responded, leading DiStasio to reiterate his request numerous times, but, to date, no accounting has been provided. [Id. at ¶¶ 41–43].

Also in March 2012, DiStasio evicted a tenant from the Property. [ECF No. 11 ¶ 44]. The tenant had caused severe damage to the Property, and the Holbrook Building Inspector told DiStasio that significant repairs were necessary to avoid condemnation. [Id. at ¶¶ 45–46]. DiStasio, in turn, informed Emigrant that he would be unable to make payments on the mortgage for several months because he would need the funds, typically used to pay the mortgage, to cover the cost of repairs. [Id. at ¶ 47]. In May 2012, Emigrant agreed to "forego all mortgage payments until the tenant was evicted, new tenants were acquired, and the necessary repairs were completed." [Id. at ¶ 48]. Nevertheless, DiStasio received the first foreclosure notice from Emigrant around August 2012. [Id. at ¶ 49]. DiStasio continued to make repairs to the Property, which cost more than $50,000.00, and repeatedly attempted to contact Emigrant to "work[ ] out the mortgage."[1] [Id. at ¶¶ 50, 53]. Despite DiStasio's attempts to confer with Emigrant regarding mortgage payments, Emigrant sent DiStasio a notice of foreclosure auction in June 2013. [Id. at ¶ 54].

In July 2013, DiStasio commenced an action against Emigrant in the Norfolk County Superior Court for negligence, wrongful foreclosure, breach of the implied covenant of good faith and fair dealing, tortious interference with contractual relations, and injunctive relief. See [EFC No. 1-1 at 71]. In the state court action, his claims were, in large part, based on Emigrant's

---

[1] DiStasio's pleadings do not describe any conversations with an Emigrant representative about the mortgage, but in November 2012, he met with an Emigrant employee at the Property to allow the employee to photograph it. [Id. ¶¶ 50–51].

3

withholding of a full accounting of the mortgage payment activity and breach of its agreement to forego regular mortgage payments until DiStasio finished repairing the Property by "wrongfully proceeding to foreclosure." [ECF No. 21-1 at 4–5]. On October 31, 2016, the Superior Court entered summary judgment in favor of Emigrant on DiStasio's claims for negligence (Count I) and tortious interference with contract (Count IV). [Id. at 8–10]. Then, on May 3, 2019, the Superior Court dismissed with prejudice DiStasio's remaining claims for wrongful foreclosure (Count II), breach of the covenant of good faith and fair dealing (Count II), and injunctive relief (Count V). [ECF No. 1-1 at 68].

In August 2019, Emigrant foreclosed on the Property, [ECF No. 11 ¶ 57], and sold it to Retained Realty for $569,364.82, [id. at ¶ 59].

Retained Realty initiated this action on May 13, 2021. [ECF No. 1]. On July 26, 2021, Defendants answered the Complaint and brought counterclaims against Retained Realty. [ECF No. 8]. Then, on August 8, 2021, Defendants filed a third-party complaint against Emigrant. [ECF No. 11]. Retained Realty and Emigrant ("Plaintiffs") jointly moved to dismiss the counterclaims and third-party claims on November 1, 2021, [ECF No. 20], Defendants opposed on December 10, 2021, [ECF No. 26], and Plaintiffs filed a reply on December 23, 2021, [ECF No. 29].

## II.   LEGAL STANDARD

On a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff-in-counterclaim's theory, and draw all reasonable inferences from those facts in favor of the plaintiff-in-counterclaim. See U.S. ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). While detailed factual allegations are not required, a

counterclaim complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and it must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005) (internal quotations omitted)).  The facts alleged must be sufficient to "state a claim to relief that is plausible on its face." A.G. ex rel. Maddox, 732 F.3d at 80 (quoting Twombly, 550 U.S. at 570).

### III. DISCUSSION

Plaintiffs argue that DiStasio's claims are barred by the doctrine of *res judicata* because his counterclaims and third-party claims were litigated and adjudicated in the prior lawsuit in Norfolk Superior Court.  [ECF No. 21 at 5–8].

"Res judicata, in its claim preclusion aspect, is intended to prevent the re-litigation of claims already litigated or that should have been litigated in an earlier action." Iantosca v. Step Plan Servs., Inc., 604 F.3d 24, 30 (1st Cir. 2010).  When federal courts sit in diversity, as here, they are "to apply 'the law that would be applied by state courts in the State in which [it] sits' in all situations other than those 'in which the state law is incompatible with federal interests.'" Salvati v. Fireman's Fund Ins. Co., 368 F. Supp. 3d 85, 90 (1st Cir. 2019) (quoting Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508–09 (2001)).  The First Circuit has determined that Massachusetts' law of claim preclusion is not incompatible with federal interests, therefore this Court "appl[ies] Massachusetts law to determine the preclusive effect of the state-court judgment." Alston v. Town of Brookline, 997 F.3d 23, 36 (1st Cir. 2021).

Under Massachusetts law, "[t]here are three required elements for the invocation of claim preclusion: (1) the identity or privity of the parties to the present and prior actions, (2) identity of

the cause of action, and (3) prior final judgment on the merits." Baby Furniture Warehouse Store, Inc. v. Meubles D & F Ltee, 911 N.E.2d 800, 806 (Mass. App. 2009) (quoting Kobrin v. Bd. of Registration in Med., 832 N.E.2d 628, 634 (Mass. 2005)).  Here, all three elements are met and DiStasio's counterclaims and third-party claims are therefore barred.

First, there is no dispute that the parties to the present and prior action are identical or in privity with each other.  See, e.g., [ECF No. 11 ¶ 9 (DiStasio concedes that "Emigrant and RRI are, for purposes of this complaint, counterclaim, and subsequent third party complaint, the same entity."); ECF No. 8 ¶ 3; ECF No. 26 at 6–7].  Second, there is identity of the cause of action.  Massachusetts law holds that "[a] claim is the same for res judicata purposes if it is derived from the same transaction or series of connected transactions." Saint Louis v. Baystate Med. Ctr., Inc., 568 N.E.2d 1181, 1185 (Mass. App. 1991).  Both here and in the state-court action, DiStasio's claims are, and were, premised on allegations that Emigrant (1) failed to provide DiStasio with a full accounting of the mortgage and (2) knew that DiStasio intended to repair the Property, agreed to forego mortgage payments on the Property until the repairs were complete, and breached that agreement by nonetheless proceeding to foreclosure.  See [ECF No. 21-1 at 4–6; ECF No. 8 ¶¶ 133–58; ECF No. 11 ¶¶ 62–87].  Because the acts giving rise to the claims are common, the claims have identity.[2]  The Court also notes that it is immaterial that, here, unlike in

---

[2] The identity of the cause of action is further borne out by DiStasio's use of nearly identical language to set forth the counts in both complaints.  Compare [ECF No. 21-1 ¶¶ 64–66 (the state-court count)]: "Defendant owed Plaintiff a duty of good faith and fair dealing under the Mortgage and Agreement.  Defendant has breached the covenant of good faith and fair dealing by refusing to provide a full accounting of the mortgage payment activity, breaching the agreement to forego mortgage payments on the property until the repairs were complete, and by wrongfully proceeding to foreclosure.  As a direct result of Defendant's breach Plaintiff has been or will be damaged in an amount of greater than $200,000.00[.]" with [ECF No. 11 ¶¶ 71–73 (the instant count)]: "Emigrant owed DiStasio a duty of good faith and fair dealing under the Mortgage and Agreement.  Emigrant breached the covenant of good faith and fair dealing by refusing to provide a full accounting of the mortgage payment activity, breaching the agreement

the state-court action, DiStasio brings claims to quiet title and violation of Mass. Gen. Laws ch. 93A. The inquiry into the identity of the claims "does not focus on the labels or sources for the plaintiff's causes of action but instead considers whether . . . both sets of claims . . . derive from a common nucleus of operative facts.'" Silva v. City of New Bedford, 660 F.3d 76, 79 (1st Cir. 2011) (quoting Breneman v. U.S. ex rel. F.A.A., 381 F.3d 33, 38 (1st Cir. 2004)). That the claims in the two actions derive from a common nucleus of facts is sufficient to support the finding that the claims have identity.

The third factor is also satisfied because there was a final judgment on the merits. On October 31, 2016, the Superior Court entered summary judgment for Emigrant on two of DiStasio's claims (negligence and tortious interference with contract) and later, on May 3, 2019, dismissed all of his remaining claims with prejudice. [ECF No. 21-1 at 8–10; ECF No 1-1 at 68]. Relevant here, "dismissal of [a] prior Massachusetts action with prejudice constitutes a 'final judgment on the merits' for claim preclusion purposes." Martone v. Sokol, 2011 WL 6337645, at *2 (D.N.H. Dec. 19, 2011) (citing Bagley v. Moxley, 555 N.E.2d 229, 231 (Mass. 1990) ("[F]or the purposes of res judicata analysis, the dismissal with prejudice . . . constituted an adjudication on the merits as fully and as completely as if the order had been entered after trial.")).

DiStasio argues that claim preclusion does not bar his claims because "a valid final judgment was not reached in the [state-court] case begun on July 8, 2013" as "the Judge determined that there was no injury on [the day the state-court action was dismissed]." [ECF No. 26 at 6]. This allegation is entirely unsupported, and the Court will not consider what is, in

---

to forego mortgage payments on the property until the repairs were complete, and by wrongfully proceeding to foreclosure. As a direct result of Emigrant's breach DiStasio has been damaged in an amount of greater than $200,000.00[.]"

essence, an unsubstantiated assertion of another court's legal reasoning.  See Grajales v. P.R. Ports Auth., 682 F.3d 40, 45 (1st Cir. 2012).  Moreover, his assertion is controverted by the state-court record, which shows, as previously discussed, that the court granted summary judgment in favor of Emigrant on two of DiStasio's claims and subsequently dismissed *with prejudice* all remaining claims.  [ECF No. 21-1 at 8–10; ECF No 1-1 at 68].  Under Massachusetts law, the state-court's judgment constitutes a valid final judgment, and DiStasio's claims are barred.  Sokol, 2011 WL 6337645, at *2; Medeiros v. Middlesex Ins. Co., 716 N.E.2d 1076, 1079 (Mass. App. Ct. 1999); Bagley, 555 N.E.2d at 637.

Having found that Defendants' claims are barred by *res judicata*, the Court need not reach Plaintiffs' arguments that, in the alternative, Defendants' claims should be dismissed because they are barred by the applicable statutes of limitations, the doctrine of issue preclusion, and fail to state a plausible claim for relief.

## IV.     CONCLUSION

Accordingly, Plaintiffs' motion to dismiss Defendants' counterclaims and third-party claims, [ECF No. 20], is GRANTED.

**SO ORDERED.**

September 15, 2022

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE